IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| **LATONYA CHAMES,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | Civ. No.: 1:20-cv-01826-ACA |
| v. ] | |
| ] | |
| **CALHOUN COUNTY COMMISSION,** ] | |
| ] | |
| **Defendant.** ] | |

## MEMORANDUM OPINION

Before the court is Defendant Calhoun County Commission's (the "County") motion to dismiss. (Doc. 5). Plaintiff Lieutenant LaTonya Chames alleges that the County discriminated against her based on her race and gender in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*; 42 U.S.C. § 1981; and the Equal Pay Act of 1963, 29 U.S.C. § 206(d), as amended by the Lilly Ledbetter Fair Pay Act of 2009, 42 U.S.C. § 2000e-5(e)(3). (Doc. 1).

Because the County is not Lt. Chames' employer, the court **WILL GRANT** the County's motion to dismiss.

## I.   BACKGROUND

At this stage, the court must accept as true the factual allegations in the complaint and construe them in the light most favorable to the plaintiff. *Butler v. Sheriff of Palm Beach Cnty.*, 685 F.3d 1261, 1265 (11th Cir. 2012).

In 2002, Lt. Chames—an African-American female—began working as a Corrections Officer in Calhoun County. (Doc. 1 at 3). In 2013, she became a Licensed Practical Nurse, and in 2016 she became one of three Corrections Lieutenants in Calhoun County. (*Id.*). Lt. Chames is the only African American and the only female Corrections Lieutenant in Calhoun County; the other two lieutenants are white males. (*Id.* at 3–4).

Despite holding the same position, Lt. Chames earns between $15,000.00 and $17,000.00 per year less than her white, male counterparts. (Doc. 1 at 4). In 2018, Lt. Chames discussed the pay disparity with her supervisor, Captain Starr, which he acknowledged. (*Id.*). The pay disparity persisted, however, so Lt. Chames met with Sheriff Wade in early 2019 and told him that she suspected she was being paid less than the other two lieutenants because of her race and gender. (*Id.*). The sheriff agreed that her pay was unfair and told her that he would petition the County to increase her salary. (*Id.*).

In April 2019, Sheriff Wade reported back to Lt. Chames that he had asked that the County increase her pay, but it had refused. (Doc. 1 at 5). Sheriff Wade

then told Lt. Chames he would draft a letter to the County formally requesting that the County increase Lt. Chames' pay to an amount comparable to the other lieutenants. (*Id.*). About a month later, Sheriff Wade told Lt. Chames that the County was considering offering her a $5,000 per year raise. (*Id.*). Lt. Chames pointed out that the proposed increase in salary would not remedy the pay gap between her and the other lieutenants. (*Id.*).

Next, Lt. Chames spoke with Commissioner Fred Wilson about her pay. (Doc. 1 at 5). He directed her to speak with the County Administrator, Mark Tyner, who promised to investigate. (*Id.*). Lt. Chames never heard anything further from Mr. Tyner. (*Id.*). In June 2019, however, Chief Deputy Jon Garlick informed Lt. Chames that the County had decided to offer her the previously discussed $5,000 raise. (*Id.* at 5–6). Chief Deputy Garlick also reported that Sheriff Wade had tried to persuade the County to remedy the pay disparity, but that the County had refused. (Doc. 1 at 6).

In exchange for her $5,000 pay increase, Lt. Chames was expected to sign an "acknowledgment stat[ing] that Sheriff Wade was financially responsible for [Lt. Chames'] raise and that [Lt. Chames] agreed to waive her rights as a civil service employee." (*Id.*). Lt. Chames refused to sign the document. (*Id.*). The other two lieutenants both received a $10,000 raise, exacerbating the pay gap. (*Id.*).

After declining the minor pay increase, Lt. Chames met with Commissioner Wilson a second time. (Doc. 1 at 6). She again reported the pay disparity between her and the other two lieutenants and explained to Commissioner Wilson that she had contacted legal counsel and the Equal Employment Opportunity Commission ("EEOC") for assistance with her discrimination claim. (*Id.*). In response, he discouraged Lt. Chames from pursuing a discrimination suit and told her that "reporting discrimination to the EEOC would work against her and create a difficult work environment for both her and [the County]." (*Id.* at 7). Then, despite knowing that Lt. Chames was a Corrections Lieutenant, he said, "Aren't you a nurse?" (*Id.*). Lt. Chames was offended by his comment and feared retaliation if she pursued her discrimination claim. (Doc. 1 at 7). Regardless, after the EEOC issued its right to sue notice in August 2020 (doc. 1-3 at 2), Lt. Chames brought this suit (doc. 1).

## II.   DISCUSSION

"To survive a [Rule 12(b)(6)] motion to dismiss, the plaintiff must plead 'a claim to relief that is plausible on its face.'" *Butler*, 685 F.3d at 1265 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

Case 1:20-cv-01826-ACA   Document 11   Filed 04/14/21   Page 5 of 12

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

The County argues that Lt. Chames has failed to state a claim because, as a matter of law, she is an employee of the Calhoun County Sheriff's Office ("Sheriff's Office"), not the County. (Doc. 6 at 2). Ms. Chames does not dispute that she is employed by the Sheriff's Office but argues that the County acts as her joint employer. (Doc. 8 at 3). Under Alabama law, however, the sheriff has sole authority over his employees, and the County has no authority to manage or control those employees. Accordingly, the court **WILL GRANT** the County's motion to dismiss. (Doc. 5).

1. Title VII

"A Title VII workplace discrimination claim can only be brought by an employee against [her] employer." *Peppers v. Cobb Cnty.*, 835 F.3d 1289, 1297 (11th Cir. 2016). Title VII defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b). "Person" is defined as including "one or more . . . governments, [or] governmental agencies." *Id.* at § 2000e(a). To determine whether a defendant is a qualified employer, courts ask "who (or which entity) is in control of the fundamental aspects of the employment

5

relationship that gave rise to the claim." *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1345 (11th Cir. 1999).

The Sheriff's Office and the County are legally distinct government entities. In Alabama, a county sheriff "is a constitutionally established executive officer of the State of Alabama." *King v. Colbert Cnty.*, 620 So. 2d 623, 625 (Ala. 1993) (citing Ala. Const. 1901, Art. V, § 112, § 138). And a county is "an instrumentality of the state of Alabama, and is authorized to do only those things permitted or directed by the legislature of Alabama." *Lockridge v. Etowah Cnty. Comm'n*, 460 So. 2d 1361, 1363 (Ala. Civ. App. 1984).

"[T]he authority of the sheriff over operation of the jail is 'totally independent' of the county commission." *Turquitt v. Jefferson Cnty.*, 137 F.3d 1285, 1290 (11th Cir. 1998) (quoting *King*, 620 So. 2d at 625). Under Alabama law, "the sheriff has control over . . . the employees of the jail," and the county "has no authority to manage the sheriff's employees." *Id.* "[A] county commission does not have the authority, or the responsibility, to promulgate policies and work rules for employees of the sheriff's office, nor does a county commission have authority over law-enforcement policies or the training, supervision, hiring, or firing of the sheriff's employees." *Ex parte Sumter Cnty.*, 953 So. 2d 1235, 1238 (Ala. 2006).

It is undisputed that Lt. Chames is an employee of the Sheriff's Office. (Doc. 6 at 2; Doc. 8 at 3). In her response to the motion to dismiss, however, she states that the County is her "joint employer" for purposes of Title VII. (Doc. 8 at 3).

In some cases, when two entities "share or co-determine those matters governing the *essential* terms and conditions of employment," courts will consider them joint employers for purposes of Title VII. *Peppers*, 835 F.3d at 1300 (quoting *Virgo*, 30 F.3d at 1360) (emphasis in original). The joint-employer theory recognizes that two entities are separate, but "conclude[s] that the two separate entities collaborated to jointly employ an individual." *Id.* at 1299. Courts are "well-advised to act with care and circumspection before aggregating separate state actors as joint employers." *Id.* at 1299–1300. When the entities in question are creations of state law, courts "must remain mindful of the state's expressed determination that the agencies and subdivision of government are divided and separated." *Id.*

Alabama "impose[s] complementary but distinct duties upon counties and sheriffs with respect to the county jails." *Turquitt*, 137 F.3d at 1290. In the context of a § 1983 claim, the Eleventh Circuit held that the "Alabama Supreme Court has dispelled the partnership theory" because of the sheriff's independent authority over the county jail and its employees. *Id.* The county's role is limited to funding: "Section 11-14-20 [of the Alabama Code] places upon the County the duty to make

available adequate funds, while § 11-14-21 passes the mantle of responsibility to the sheriff who must spend those funds." *Id.*  Although the county "pays the salaries of the sheriff and jail personnel," its duty to do so "does not translate into control over [the sheriff]." *Turquitt*, 137 F.3d at 1290 (quoting *McMillan v. Monroe Cnty.*, 520 U.S. 781, 791 (1997)).

Here, Lt. Chames has not plausibly alleged that the County and the Sheriff's Office were joint employers for purposes of Title VII liability.  The statutory scheme in Alabama is clear: employees of the Sheriff's Office report exclusively to the sheriff, who is an executive officer of the state.  Even though the County paid Lt. Chames' salary, it had no legal authority to control the fundamental aspects of her employment—that duty remained with Sheriff Wade.

Sheriff Wade's assertion that he "tried to persuade" the County to give Lt. Chames a raise does not change this analysis.  The County's refusal to correct the pay disparity between Lt. Chames and the other lieutenants is also irrelevant.  In response to the motion to dismiss, Lt. Chames refers to various policies and procedures promulgated by the County.[1]  But under Alabama law, the County had no authority to promulgate policies to employees of the sheriff's office.  The

---

[1] Lt. Chames attaches several exhibits to her response to the motion to dismiss. (Doc. 9). If the court considers evidence outside of the pleadings, then it must convert the motion to dismiss into a motion for summary judgment. *Finn v. Gunter*, 722 F.2d 711, 713 (11th Cir. 1984).  Here, the court does not consider Ms. Chames' evidence in ruling on the motion to dismiss.  The evidence would not change the outcome here because Lt. Chames' claim fails as a matter of law.

County's only statutory power is to provide funding to Sheriff Wade; it is his duty to allocate that funding.

At this stage, the question is whether the complaint plausibly alleges that the County was Lt. Chames' employer for purposes of Title VII. Considering how the Alabama Supreme Court and Eleventh Circuit have interpreted Alabama's statutory scheme, it does not. Accordingly, the court **WILL GRANT** the County's motion to dismiss Lt. Chames' Title VII claims.

2. The Equal Pay Act

Lt. Chames also fails to plausibly allege that the County is her employer under the Equal Pay Act. "The question of whether a particular defendant is an employer under the Equal Pay Act is a question of law." *Welch v. Laney*, 57 F.3d 1004, 1011 (11th Cir. 1995) (citing *Patel v. Wargo*, 803 F.2d 632, 634 (11th Cir. 1986)). The Act defines employer as "any person acting directly or indirectly in the interest of an employer in relation to an employee and includ[ing] a public agency." *Id.* (quoting 29 U.S.C. § 203(d)). To determine whether a defendant is an employer, courts consider "whether or not the employment took place on the premises of the alleged employer; how much control did the alleged employer exert on the employees; and, did the alleged employer have the power to fire, hire, or modify the employment condition of the employees?" *Id.* (quoting *Wirtz v. Lone Star Steel Co.*, 405 F.2d 668, 669–70 (5th Cir. 1968)) (alterations accepted).

Here, as already discussed, the County was statutorily prohibited from exerting control over Lt. Chames' employment. It was exclusively Sheriff Wade's decision whether to hire, fire, or modify the employment conditions of Lt. Chames. The complaint alleges that Sheriff Wade consulted with the County in determining Lt. Chames' salary, but the County "exercised no direct control over [Lt. Chames]." *Welch*, 57 F.3d at 1011. Accordingly, the Sheriff's Office is Lt. Chames employer for purposes of the Equal Pay Act, and the court **WILL GRANT** the County's motion to dismiss Lt. Chames' Equal Pay Act claim.

3. Section 1981

Finally, Lt. Chames fails to state a claim for discrimination or retaliation against the County under 42 U.S.C. § 1981. First, the Eleventh Circuit has "held that § 1981 does not provide an implicit cause of action against state actors; therefore, § 1983 constitutes the exclusive federal remedy for violations by state actors of the rights guaranteed under § 1981." *Bryan v. Jones*, 575 F.3d 1281, 1288 n.1 (11th Cir. 2009) (citing *Butts v. County of Volusia*, 222 F.3d 891, 894–95 (11th Cir. 2000)).

Here, Lt. Chames does not plead her § 1981 claim pursuant to 42 U.S.C. § 1983. (Doc. 1 at 7, 12). Accordingly, because the County is a state actor, *see Lockridge*, 460 So. 2d at 1363, her § 1981 claims are due to be dismissed. But even

construing the complaint as alleging a § 1981 claim pursuant to § 1983, Lt. Chames still fails to state a claim.

"To state a claim of race discrimination under § 1981, a plaintiff must allege facts establishing: (1) that [she] is a member of a racial minority; (2) that the defendant intended to discriminate on the basis of race; and (3) that the discrimination concerned one or more of the activities enumerated in the statute." *Moore v. Grady Mem'l Hosp. Corp.*, 834 F.3d 1168, 1171–72 (11th Cir. 2016) (quoting *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1270 (11th Cir. 2004)) (alterations accepted). "Any claim brought under § 1981 . . . must initially identify an impaired 'contractual relationship' . . . under which the plaintiff has rights." *Id.* (quoting *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006)). Further,

Here, the complaint clearly satisfies the first two elements of § 1981: Lt. Chames is an African American, and the County paid her less than her white counterparts. The County attacks the third element of the claim. The County argues that it cannot be liable under § 1981 because Lt. Chames was an employee of the Sheriff's Office, not the County. (Doc. 6 at 2). As already discussed, as a matter of law, Lt. Chames is an employee of the Sheriff's Office, not of the County. Other than employment, Lt. Chames alleges no relationship with the County that satisfies the third element of her § 1981 claim. Accordingly, the court **WILL GRANT** the County's motion.

## III.   CONCLUSION

Because Lt. Chames has failed to state a claim for relief, the court **WILL GRANT** the County's motion to dismiss and **WILL DISMISS WITHOUT PREJUDICE** Lt. Chames' claims against the County.

**DONE** and **ORDERED** this April 14, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE